Good morning. I'm Nancy Collins here on behalf of Mr. Lee. Mr. Lee was convicted of, among other things, several counts of manufacturing marijuana and two counts of maintaining drug-involved premises. These counts should be overturned due to the insufficient proof of the essential element of his knowing and intentional involvement in the offense, including its full scope. Now, this involves three properties that Mr. Lee had owned for some time as rental properties initially. The police found evidence in these three separate homes that marijuana either had been or was actively growing in these homes. And you're not challenging the conviction for conspiracy or for the one count of maintaining drug-involved premises? Nancy Collins That's correct. That's correct. In light of the standards for a sufficiency evidence review, we're focusing on these particular counts and not the other ones. I'm just curious, isn't the trial evidence that's sufficient to support those counts go against your argument that there's insufficient evidence for the count that you are challenging? Nancy Collins Well, taking into account the standards of review for sufficiency and the broader scope of a conspiracy, which is far harder to challenge being in an overall, embracing more and requiring less particular individual behavior, the proof that we're focusing on and challenging here is to the specific homes and Mr. Lee's, the evidence of his specific knowledge and involvement in those. And while you can… Katherian Roe But the conspiracy involved in the maintaining of the drugs account involved the same homes, did they not? Nancy Collins They did. They did. And maybe it's a fine line, but our argument is that that line is simply crossed on these counts and it just falls below that line on those other counts, so we haven't challenged those. Now, Mr. Lee was the person who owned these homes, but he wasn't the person where there was evidence that he was actually in the homes growing the marijuana, so the government had indicted Mr. Lee and the jury was instructed on accomplice liability. And as our Supreme Court recently clarified in Rosemont, aiding and abetting requires a state of mind extending to the entire crime. Here there was limited involvement of Mr. Lee's actual own involvement in each home. He was a middle-aged man who fell in love with a younger woman and she was the one who was, where there was evidence that she was having people, instructing them on growing the marijuana, actually participating in that growth inside the homes and supplying them with the equipment that they needed. Now, these are separate offenses and a conviction cannot be based on sheer speculation or propensity. That inference is not just simply because the jury could conclude propensity for one home, say, for example. They can simply say, well, if he did it once, he must have done it these other times. Even though you can look at the totality of the evidence, it can't be based simply on propensity or simply on speculation. And here you have Mr. Lee in these various homes. I'm not going to repeat all the evidence that was put in the briefs, but essentially in one home in Kowntoon, the Renton house, there were a lot of marijuana plants inside, but there wasn't evidence of Mr. Lee's actual involvement or presence. The person who came in and testified, who the government accused of being the one who had been growing those, the marijuana plant said, denied any involvement, said he never did any of that stuff. So there simply wasn't evidence connecting him to that marijuana being grown in that home. In the Marysville home that was Kownton 4, there was the prior evidence that there's old soil and tools, but there was no active marijuana actually being grown at the time. There was a person who came in and testified saying he had received written instructions to grow trees in that home. And that Mr. Lee had come to the house a few times, but it was Mr. Lee's then-girlfriend, Ms. Way. Counsel, I thought there was testimony that your client was observed inspecting and handling the marijuana at least two of the homes, Marysville and Shoreline. Am I mistaken about that? The Marysville testimony was very ambiguous. Mr. Kiat-Taw was the only person who testified about that, and he said that Mr. Lee had been actually in the home when there was plants growing, or trees, I guess he called them. He didn't actually ever identify it as marijuana. He called them trees or flowers. But he doesn't give clear testimony about Mr. Lee actually being involved in any sort of handling or involvement there. The Shoreline home in Kownton 3 is the closest evidence of these and the finest line to draw because there were people who came in and said that Mr. Lee actually came in and did handle those. Our argument in the Shoreline Kownton 3 is focused on essentially that aggravating factor, and we argue here that because there's a mandatory minimum that is triggered by the quantity of over 100 plants, that if you apply the Rosemond and Alene analysis, that you really need to find that his state of mind extended to the quantity of plants in addition to just knowing an intentional involvement in the marijuana manufacturing. And they didn't prove that in this case or the other count either. And that is essentially our argument, and we ask you to find insufficient evidence on that. Let's talk about the conditions of supervised release imposed. I guess my question is with respect to the condition involving his association with other felons, and in this case, which would involve his spouse, it looks like your opening brief did not reference United States versus Wolfchild or Napaloo in challenging the conditions of supervised release barring Mr. Lee. Did you object at the time of sentencing? None of these arguments that were raised on the challenging of the sentencing were objected to, so they're all simply a plain error review. And so it didn't occur to you at the time to object? Well, I wasn't the trial attorney in this case. So it didn't occur to your prior counsel? Yeah, I wasn't involved in the trial proceedings at all, but there weren't any objections. There wasn't really any discussion by the government either or the court, and no one was arguing that these conditions were in any way important or relevant, and the judge didn't give any special consideration to those. They simply imposed them. Well, the reason for that is it's a standard condition. A sentencing judge is not going to look at standard conditions really. So it was clearly an oversight. Had she been given the opportunity, I'm sure she would have addressed it. In fact, counsel, if lawyers had gone to this judge and brought it to her attention, it's very simple to modify conditions of supervision, and I just bet you she would have modified it. That may be the case. Since I'm just an appellate lawyer, I never think of going back into the trial court and doing that, and you may be right, that's a better approach and probably a valid approach here. But it is, since given Mr. Lee's particular posture as a medical doctor, and even if he's not actually practicing when released and if he were to want to help treat patients in some kind of health care facility, which would be the obvious employment he could find, even if he's not a medical doctor, he could provide that level of care and help a medical doctor, depending on how his licensing status is at the end of the day, and I don't know about that. He certainly shouldn't be in violation of supervised release if he's giving care to people, and even if they're people who are actually themselves using illegal drugs or something like that, we don't want to put him in that place where he can't have employment or be unsure about the ability to get gainful employment upon release. Do you want to reserve your time? Yes, I'll reserve my remaining time. Thank you. Good morning, Your Honors. Good morning. My name is Sarah Vogel. I'm an assistant United States attorney here in Seattle, and I represent the United States. I think I'll address the supervised release conditions first. With regard to the condition that Mr. Lee has challenged, which would preclude him from associating with a felon, of course this was not raised, and I think it's clear that it wasn't raised because it hadn't been an issue throughout the whole pretrial period when Mr. Lee and his wife had been residing together for over a year pending trial. Well, the pretrial release report allows contact with his wife. Yes, and that was a modification that was made with the agreement of the parties when it was raised with the court and the probation officer without any concern. So I think the point is that this is an issue that could easily be modified and addressed at the time of the supervised release in the future. So you agree that it has to be remanded in light of U.S. v. Wolfchild, or you're just agreeing that it has to be remanded on this? No, I'm agreeing that this is a type of modification that could be made at the time of the supervised release by the judge at the time that supervised release commences. Oh, I see. And I believe there are several United States cases that talk about how these types of limitations and exclusions in the details of how the supervised release will be implemented based on a particular offender's family situation, et cetera. Those things can be modified as needed at the time in order to be workable. So when is his release date? I believe it is in 2018 or 19. So even though there's an objection, you're suggesting we do nothing and just hope that it's cleared up at the time? I'm suggesting, Your Honor, that since there was no objection at the time before the district court, that when the time comes for Mr. Lee to be released, if he is still married to Ms. Bowie, if Ms. Bowie hasn't been deported, if he is still in a position to live with somebody who is a felon and it's somebody that the court and probation officer believe should be accommodated, then the court has the power to make that accommodation at the time. But I guess let me just, it's an interesting suggestion, but now on appeal the defendant is arguing that it was plain error in light of U.S. v. Wolfchild to impose that at the time. So what's your response to that? Doesn't U.S. v. Wolfchild compel us to? Your Honor, I'm not sure that the defense actually argued Wolfchild. I know, but we brought Wolfchild to your attention, I guess, now, or I'm bringing it to your attention now. Are you aware of U.S. v. Wolfchild? No, Your Honor. Okay. It wasn't briefed, so I apologize. I am, however, aware of cases that talk about non-facial challenges on the basis of speculation about how the imposed conditions, when there was no objection, might fit in with currently unknown conditions in the future, shouldn't be the basis for reversal. And the case I'm looking at is United States v. Romero. This is 76th at 2nd, 406th, a Ninth Circuit case from 1982. So the idea being that in certain cases like this where we're simply speculating that there might be reversible error, plain error sometime in the future, that that should be addressed at the time as opposed to with remand. With regard to would the court like me to address the sufficiency of the evidence issue? Well, I will just say that when viewed in the light most favorable to the government and declining the defendant's invitation to re-weigh or simply ignore some of the witness testimony, as this court must, there was more than sufficient evidence to support the jury's guilty verdicts on the five challenged counts. And I would note that contrary to the defendant's characterization, this really was not an aiding and abetting liability case. While aiding and abetting was one of the alternate theories of liability that was charged and the jury was instructed on it, the evidence that was presented to the jury did not rely primarily on an aiding and abetting theory. In fact, the evidence presented to the case, both in support of the conviction for conspiracy and in support of the convictions for the actual substantive manufacturing counts and the maintaining the drug premises counts, established that the defendant, Mr. Lee, was the primary leader of this group of individuals who were involved in marijuana growth, that he set up the grows, that he was in charge of the three grows, and that while he necessarily may have aided and abetted those people he hired to help him and they necessarily aided and abetted him, he was personally and directly responsible in the grows, all three of the grows that were put into place in furtherance of the overall conspiracy. And the evidence of this comes from the corroborated testimony of the co-conspirators. Those are the two tenders at the Shoreline House who each independently testified that Mr. Lee put them in there, supervised them, and came over periodically to check on the progress of the grow and actually physically helped out with some of the labor, including moving plants when the grow got too full, indicating that he was well aware of the quantity of the plants at that location, and then moved them to another location where they were later found. So all of this evidence, along with the financial records, the business records, such as the U-Haul documents, and then the documents that were found in the defendant's home, the shopping lists of grow equipment, the receipts, the invoices, and then the cover-up with the fake leases. And the fake leases applied to all three of the grow houses. The Renton fake lease that Jack Tran testified was fake, was false. He never signed that, never paid rent. The Marysville fake lease that Kiat-Tah testified he was asked to sign by the defendant, Mr. Lee, even though he didn't read English and had no idea what it said. And the Shoreline lease that Hung Lee testified he was asked to sign so that Lee could keep some distance between himself and the marijuana grow that he had hired Hung Lee to keep an eye on. If there are no further questions, the United States will rest on its brief and ask this court to affirm. Thank you. And I'll just finish by urging you to at least remand the case to address those sentencing conditions. Under the Sentencing Statute 3553, the court should not impose a greater deprivation of liberty than reasonably necessary and be consistent with the formal policies of the sentence. And under that standard, in addition to the Wolf Child case, we ask that you remand so the court can address those sentencing conditions. Mr. Lee was in the position of hiring a retaining counsel when he was in trial court but is now indigent, no longer in that position. And it would be the most efficient and fair to at least address that sentencing conditions. Thank you very much. Thank you. The case of U.S. v. Keith Lee is now submitted. And that concludes our docket for this morning. Thank you all very much. We'll be in recess.
judges: Graber, Murguia, Bury